UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| JONATHAN GREENWOOD, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 2:17 CV 39 CDP |
| DAVOL, INC., et al., | ) ) ) |
| Defendants. | ) ) |

# MEMORANDUM AND ORDER

Plaintiff was implanted with a Davol Bard Mesh PerFix Plug during hernia repair surgery in 2003.  Plaintiff alleges that the defective condition of the mesh plug caused him to have emergency surgery to remove a hard mass containing infected mesh and a perforated appendix and another hernia repair in 2016. Plaintiff alleges he has also had further treatment for infection and pain since that time.  He brings claims for negligence, strict liability, and breach of warranty under Missouri law.  He also seeks punitive damages.

Named as defendants are Davol and Bard, the designers and manufacturers of the mesh plug, and Red Oak.[1]  Plaintiff alleges that Red Oak is a North Carolina corporation and a wholly owned subsidiary of Bard.  According to plaintiff, Red Oak supplied defective polypropylene resin to Bard and Davol to make the mesh

---

[1] Although the complaint names Red Oak Sales, Inc., the proper party name is actually Red Oak Sales Company.  [Doc. #20].

plug. [Doc. #1 at Para. 4]. Red Oak denies that it is a subsidiary of Bard and that it sold polypropylene resin to Bard and Davol. Red Oak asserts that it has no contacts whatsoever with Missouri and accordingly moves to dismiss plaintiff's complaint for lack of personal jurisdiction. In opposition to dismissal, plaintiff argues that Red Oak is the alter ego of Bard and Davol and that their Missouri contacts should therefore be attributed to Red Oak. According to plaintiff, Bard and Davol's contacts are sufficient to support personal jurisdiction over Red Oak in this case. For the reasons stated herein, the motion to dismiss will be granted.

## Legal Standards

To survive a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), a plaintiff must make a prima facie showing of personal jurisdiction by pleading facts sufficient to support a "reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state." *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011). "When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). "A plaintiff's prima facie showing must be tested, not by the pleadings alone, but by affidavits and exhibits supporting or opposing the motion." *Id.* (citations omitted). The court must view the evidence "in a light most favorable to the plaintiff and resolve factual conflicts in the plaintiff's favor; however, the party

seeking to establish the court's personal jurisdiction carries the burden of proof and that burden does not shift to the party challenging jurisdiction." *Id.*

"Personal jurisdiction in a diversity case exists only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." *K–V Pharm.*, 648 F.3d at 592 (citations omitted). "[B]ecause the Missouri long-arm statute authorizes the exercise of jurisdiction over non-residents to the extent permissible under the due process clause," the Court will consider "whether the assertion of personal jurisdiction would violate due process." *Aly v. Hanzada for Imp. & Exp. Co., LTD*, 864 F.3d 844, 849 (8th Cir. 2017) (citations omitted). Due process requires that there be "sufficient minimum contacts between a defendant and the forum state so that jurisdiction over a defendant with such contacts may not offend 'traditional notions of fair play and substantial justice." *Id.* (citations omitted). Specifically, courts consider five factors: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relationship of those contacts with the cause of action; (4) Missouri's interest in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." *Id.* Courts give "significant weight to the first three factors." *Fastpath, Inc.*, 760 F.3d at 821.

Relevant Jurisdictional Facts

Although plaintiff alleges that Red Oak is a subsidiary of Bard and supplied defective polypropylene resin to manufacture the PerFix Plug, the uncontroverted evidence establishes that Red Oak was incorporated in 1989 by Alex and Lillian Barnette of Huntersville, North Carolina. (Doc. 20-1). The Barnettes are the sole owners of Red Oak. (*Id.*). Red Oak is not a subsidiary of Bard or any other corporation, and no other individuals or corporations have ever owned any interest in Red Oak. (*Id.*). Davol and Bard do not share any managers, officers, or directors with Red Oak, nor do they have common bank accounts, financial statements, or interests. (Doc. 37-1). Davol and Bard do not finance the operations of Red Oak, pay Red Oak's expenses, or share in Red Oak's profits. (*Id.*). Red Oak maintains its principal place of business in North Carolina. (Doc. 20-1).

Red Oak does not sell polypropylene resin as alleged by plaintiff. Instead, it manufactures monofilament extrusion machines and synthetic monofilaments made out of raw materials, including resin. (Doc. 20-1). The manufacture and sale of extrusion machines account for about one-third of the company's revenues. (Doc. 37-1). Davol is one of Red Oak's customers. It purchases monofilaments from Red Oak and specifies the resins Red Oak should use in the manufacturing process. (Doc. 20-1). Davol does not, however, control Red Oak's processes for

the manufacture of the monofilaments.  (Doc. 37-1).  Two of Red Oak's three manufacturing lines were made by Red Oak and then sold to Davol in approximately 1998 and 2005.  (*Id.*).  Red Oak manufactures Davol's monofilaments on these two lines and uses the third manufacturing line for other customers and purposes.  (*Id.*).[2]  Red Oak obtains the resin for Davol from Texas, Tennessee, and New York and produces the monofilaments in North Carolina.  (Doc. 20-1).  Red Oak ships the monofilaments to Davol in New Jersey, Puerto Rico, and Rhode Island.  (*Id.*).  To be used in the PerFix Plug, the monofilament produced by Red Oak must undergo additional manufacturing processes by Davol, and Red Oak has no knowledge of, or participation in, these processes.  (*Id.*).

Red Oak does not ship Davol's monofilaments to Missouri, nor has it ever sold any of its manufacturing machines to a purchaser in Missouri.  (Doc. 37-1).  Red Oak does not own or lease any property in Missouri and has never maintained an office or any employees or agents in Missouri.  (*Id.*).  Red Oak is not registered to do business in Missouri and does not advertise or solicit business in Missouri.  Red Oak has never transacted any business in Missouri or made any contract in Missouri.  (*Id.*).

---

[2] Contrary to plaintiff's argument in opposition to dismissal, Red Oak never claims that Davol is its sole customer.

5

Discussion

After reviewing the evidence and briefs submitted by the parties, the Court concludes that it cannot exercise personal jurisdiction over Red Oak.  Although plaintiff alleges that Red Oak is a subsidiary of Bard, the uncontroverted evidence demonstrates that Red Oak is a separate corporation wholly owned by the Barnette family, not a subsidiary of either Bard or Davol.  "[C]ourts ordinarily protect the separate legal identities of individual corporations." *Levine Hat Co. v. Innate Intelligence, LLC*, No. 4:16–CV–1132 (CEJ), 2017 WL 3021526, at *4 (E.D. Mo. July 17, 2017).  Plaintiff offers no evidence to contradict the fact that Red Oak is owned by the Barnettes, not Bard.  Instead, in its reply brief plaintiff argues that Red Oak is the alter ego of Bard and Davol under Missouri law such that their separate corporate identities should be disregarded for jurisdictional purposes.

Plaintiff's argument fails to establish personal jurisdiction over Red Oak in this case.  While there are situations in which one corporation "shows such domination and control over another that the latter corporation becomes an adjunct or alter ego of the first," *Real Estate Inv'rs Four, Inc. v. Am. Design Grp. Inc.*, 46 S.W.3d 51, 56 (Mo. Ct. App. 2001), plaintiff has not submitted any evidence that

6

the companies here are alter egos, nor has plaintiff requested jurisdictional discovery to establish such a connection.[3]

"Personal jurisdiction can be properly asserted over a corporation if another is acting as its alter ego, even if that alter ego is another corporation." *Epps v. Stewart Information Services Corp.*, 327 F.3d 642, 649 (8th Cir. 2003) (citing *Lakota Girl Scout Council , Inc. v. Havey Fund-Raising Management, Inc.*, 519 F.2d 634, 637 (8th Cir. 1975)). "State law is viewed to determine whether and how to pierce the corporate veil." *Epps*, 327 F.3d at 649.

Under Missouri law, "where a corporation is used for an improper purpose and to perpetuate injustice by which it avoids legal obligations, equity will step in, pierce the corporate veil and grant appropriate relief." *Hammett v. Atcheson*, 438 S.W.3d 452, 461-62 (Mo. Ct. App. 2014) (quoting *Hibbs v. Berger*, 430 S.W.3d 296, 306 (Mo. Ct. App. 2014)); *see also Lakota Girl Scout Council*, 519 F.2d at 637 (separate corporate entities may be disregarded "where one corporation is so organized and controlled and its affairs are so conducted that it is, in fact, a mere instrumentality or adjunct of another corporation."). To pierce the corporate veil, plaintiff must demonstrate the following:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in

---

[3] Because plaintiff cannot demonstrate that Red Oak is the alter ego of Bard or Davol, I need not and therefore do not consider whether Bard and Davol's Missouri contacts, even if attributable to Red Oak, would be sufficient to establish personal jurisdiction in this case.

respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

(2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Hammett*, 438 S.W.3d at 462 (citing *Hibbs*, 430 S.W.3d at 306). To determine whether one corporation has exercised control over another under the above test, the Court must evaluate the degree of control the dominant corporation holds over the subordinate corporation by considering several factors, which include:

(1) The parent corporation owns all of most of the capital stock of the subsidiary;

(2) The parent and subsidiary corporations have common directors or officers;

(3) The parent corporation finances the subsidiary;

(4) The parent corporation subscribes to all of the capital stock of the subsidiary or otherwise causes its incorporation;

(5) The subsidiary has grossly inadequate capital;

(6) The parent corporation pays the salaries and other expenses or losses of the subsidiary;

(7) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation;

(8) In the papers of the parent corporation or in the statements of its officers, the subsidiary is described as a department or division of the parent

8

corporation, or its business or financial responsibility is referred to as the parent corporation's own;

(9) The parent corporation uses the property of the subsidiary as its own;

(10) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest; and

(11) The formal legal requirements of the subsidiary are not observed.

*Real Estate Inv'rs Four, Inc.*, 46 S.W.3d at 56–57 (*citing Collet v. American National Stores, Inc.*, 708 S.W.2d 273, 284 (Mo Ct. App. 1986)).

Red Oak has offered uncontroverted evidence that it does not operate as an alter ego of Davol/Bard. In addition to the fact that Red Oak is not a subsidiary, Davol and Bard do not share any managers, officers, or directors with Red Oak, nor do they have common bank accounts, financial statements, or interests. (Doc. 37-1). Davol and Bard do not finance the operations of Red Oak, pay Red Oak's expenses, or share in Red Oak's profits. (*Id.*). Contrary to plaintiff's argument, Davol is not Red Oak's only customer. While Red Oak made and then sold the lines it uses to manufacture Davol's monofilaments to Davol, Davol does not control the processes Red Oak uses to make the monofilaments. (*Id.*). As Davol owns these lines, it cannot be said that it uses the property of Red Oak as its own. Moreover, the monofilament produced by Red Oak must undergo additional manufacturing processes by Davol to be used in the PerFix Plug, and Red Oak has no knowledge of, or participation in, these processes. (*Id.*). The undisputed facts

demonstrate that Red Oak is a separate company with no ties to Missouri and that Davol/Bard is one of its customers, not an alter ego.

The only evidence plaintiff offers in support of its alter ego theory is attached as Exhibit B to its brief in opposition to this motion. [26-2]. According to plaintiff, Exhibit B is an e-mail sent on November 19, 2007, by Roger Darios, Vice President of Research and Advanced Technologies for Davol, to "several employees of Davol/Bard concerning the companies' efforts to procure polypropylene resin without disclosing that it would be used to make permanently implanted medical devices." [26 at 3]. Exhibit B is not authenticated by affidavit or otherwise and contains no identifying information. It is not even apparent from reviewing this document that it even is an e-mail, as it appears to be the last page of a multi-page document signed only by "Roger."[4] Plaintiffs claim the following two sentences demonstrate that Red Oak is an alter ego of Davol/Bard: "Genzyme and Secant know that we are 'vertically integrated' with respect to PP monofilament extrusion but DO NOT KNOW that Red Oaks is our extrusion supplier (captive with Davol owned assets) or that Red Oaks purchases the Phillips Marlex resin with Phillips knowledge for its use in a medical device. We need to keep this proprietary." [26-2 at 3].

---

[4] Apparently, this document was produced during discovery in another case pending in West Virginia (Case No. 2:11CV195).

Plaintiff's evidence falls woefully short of demonstrating that Red Oak is the alter ego of Davol/Bard such that the Court may pierce the corporate veil and attribute Davol/Bard's contacts to Red Oak for jurisdictional purposes.  First, the Court is under no obligation to consider the unauthenticated document as competent evidence.  Second, as Red Oak points out in its reply brief, the mere fact that it provides a product used in a multi-step manufacturing process which results in Davol/Bard's mesh plug (i.e., vertically integration) does not mean that Davol/Bard exercises complete domination and control over Red Oak.  The only evidence before the Court is that Red Oak is a supplier providing monofilaments used by Davol/Bard to ultimately manufacture and produce the PerFix Plug.  That Red Oak uses manufacturing lines purchased by Davol/Bard to manufacture the product does not compel a finding of complete domination or control by Davol/Bard over Red Oak such that the distinct corporate formalities should be disregarded.[5]  At best, it demonstrates that Davol/Bard is a large customer of Red Oak, which is insufficient to permit veil piercing.  Third, Darois testified on August 7, 2013, in *In re: C.R. Bard, Inc. Pelvic Repair System Prods. Liab. Litig.* (10-MD-2187), a multi-district case pending in the United States District Court for the Southern District of West Virginia, that Red Oak is "just a supplier" of

---

[5] Even if the Court were to conclude, as urged by plaintiff, that keeping the information proprietary amounted to evidence that Bard/Davol sought to perpetrate a fraud or injustice, that would not permit the Court to pierce the veil in this case as Missouri law still requires Bard/Davol to exercise complete domination and control over Red Oak.

11

polypropylene in monofilament form to Davol and Bard and is "not connected" to Davol or Bard. [37-2 at 3]. In the absence of any evidence that Red Oak is anything more than a supplier to Davol/Bard, the Court cannot conclude that Red Oak is the alter ego of Davol/Bard such that Davol/Bard's contacts can be attributed to Red Oak for jurisdictional purposes.

Red Oak lacks sufficient minimal contacts with Missouri to satisfy due process in the absence of the alter ego theory, and plaintiff does not advance such an argument in his opposition papers. As the uncontroverted evidence establishes that Red Oak has no contacts with Missouri, this Court cannot exercise personal jurisdiction over Red Oak in this case consistent with due process. Therefore, I will grant Red Oak's motion to dismiss for lack of personal jurisdiction.

Accordingly.

**IT IS HEREBY ORDERED** that defendant's motion to dismiss [19] is granted, and defendant Red Oak Sales Company (improperly named in the complaint as Red Oak Sales, Inc.) is dismissed without prejudice.

**IT IS FURTHER ORDERED** that this case will be set for a Rule 16 scheduling conference by separate Order.

                                                          */s/ Catherine D. Perry*
                                                    CATHERINE D. PERRY
                                                    UNITED STATES DISTRICT JUDGE

Dated this 18th day of January, 2018.